# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TERRY LATHERS (#106777)**                                   **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN**                                              **NO. 09-0383-RET-DLD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, Terry Lathers, challenges his conviction and life sentence, entered in 2004 in the Eighteenth Judicial Court for the Parish of Pointe Coupee, State of Louisiana, on one count of second degree murder. He contends that the trial court erred by failing to grant a motion to quash the indictment, that the indictment was constitutionally defective, that the prosecutor engaged in misconduct during opening and closing statements, that he was provided with ineffective assistance of counsel, and that the trial court erred by failing to sequester the jury during trial.

Upon a review of the petitioner's application, it appears that he was indicted by a grand jury in August, 1998, on a charge of second degree murder. After much procedural delay, as hereafter discussed, trial commenced on September 28, 2004, and the jury found the petitioner guilty as charged. He was thereafter sentenced, in November, 2004, to life imprisonment without the benefit of probation, parole or suspension of sentence. The petitioner appealed this conviction, asserting that the trial court erred by failing to quash the indictment and by failing to advise the petitioner of the delays for filing his post-conviction relief application in state court. On February 10, 2006, the appellate court affirmed the conviction and sentence, but remanded the case in order for the trial court to inform the petitioner of the applicable delays . See State v. Lathers, 924 So.2d 1038 (La. App. 1st Cir. 2006). The petitioner's subsequent application for supervisory review in the Louisiana Supreme Court was denied on November 3, 2006. See State v. Lathers, 940 So.2d 659 (La. 2006). Upon the petitioner's failure to seek further review in the United States Supreme Court, his

conviction became final on or about February 1, 2007, after expiration of the 90-day time limit allowed for him to do so.

On or about October 22, 2007,[1] the petitioner filed an application for post-conviction relief in the state district court, complaining of prosecutorial misconduct in numerous respects, of the admission of gruesome photographs into evidence and into the jury deliberation room, of extraneous influence upon the jury pool prior to trial, of the trial court's failure to sequester the jury, of ineffective assistance of counsel in numerous respects, and of cumulative error. When this application was summarily denied on October 30, 2007, the petitioner resubmitted his application, which was again denied on December 3, 2007. The petitioner's subsequent applications for supervisory review in the Louisiana appellate courts were denied, on August 1, 2008, and May 29, 2009, respectively. See State ex rel. Lathers v. State, 9 So.3d 157 (La. 2009).

On or about June 17, 2009, the petitioner filed the instant habeas corpus proceeding in this Court. The State has responded, asserting both procedural and substantive defenses. The State further asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels a conclusion that the petitioner's claims must be rejected.

No evidentiary hearing is required. The Court concludes, based upon the foregoing, together with a review of the record, that the petitioner's claims are barred in part by procedural default and are otherwise lacking in substantive merit.

---

[1] Under the "prison mailbox rule," a prisoner's pleadings are deemed filed when he delivers them to prison officials for mailing to the appropriate court." Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999). See also See Causey v. Cain, 450 F.3d 601 (5th Cir. 2006)(finding that, "the Louisiana Supreme Court has applied the prison mailbox rule with unfailing consistency as a matter of state law"); Terrick v. Cain, 2008 WL 4297064 (E.D. La. 2008)(holding that the prison mailbox rule is to be employed in ascertaining the filing date of a prisoner's state court pleadings in the context of determining the timeliness of his federal habeas corpus application). Applying this rule, the Court will utilize the dates indicated by the petitioner as the dates upon which he signed his respective pleadings, which are the earliest dates that may reasonably be inferred to be the dates upon which he delivered his pleadings to prison officials for mailing.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On the evening of April 11, 1988, the deceased, Linda Wall, was murdered in her home. A broken window was the apparent means of access into the home inasmuch as a brick was found on the floor inside the deceased's house, below the window, and this brick exactly matched a gap in an outside brick planting. The deceased had been stabbed 41 times, and her wallet had been rifled through. Approximately 10 years after the murder, in August, 1998, the petitioner and his brother, Johnny Lathers, were separately indicted in connection with the murder. The petitioner's brother pled guilty to manslaughter in connection with the offense, and the petitioner's case proceeded to trial. At trial, evidence was adduced that (1) an eyewitness observed the petitioner and the petitioner's brother enter the victim's yard on the night of the killing, followed by the sound of breaking glass, followed by the petitioner's return several minutes later, carrying a knife and with blood on his clothing, and (2) a second eyewitness observed the petitioner jogging on the roadway on that evening with blood on his clothing. In addition, the recorded statements of the petitioner and the petitioner's brother were introduced, wherein each party incriminated the other as having committed the offense and as having verbally admitted to having done so. The petitioner's brother, however, who was at that time serving a sentence of confinement in connection with the offense, testified during the trial and stated that the petitioner had not in fact been involved in any way in committing the murder.

Procedurally, this proceeding has taken a tortuous path. After the petitioner was separately indicted on August 20, 1998, preliminary motions were filed on his behalf, culminating in a Motion for Speedy Trial in March, 2000. Pursuant to Article 701 of the Louisiana Code of Criminal Procedure, the State was then obligated to commence trial within 120 days of the filing of the motion or, upon a failure to do so, to release the petitioner from confinement in the absence of a showing of good cause. When the State thereafter failed to commence trial within 120 days, the petitioner filed motions for release in August and September, 2000. After an evidentiary hearing

conducted on these motions, the trial court denied same, apparently upon a finding that the acquiescence of the petitioner's attorney in the setting of a trial date beyond the 120-day time period was sufficient to support a showing of good cause. The petitioner sought supervisory review of this determination in the Louisiana Court of Appeal for the First Circuit, which reversed the trial court and ordered the petitioner's release on October 19, 2000. Notwithstanding, a subsequent application for supervisory review in the Louisiana Supreme Court resulted in a reversal of the intermediate appellate court's decision on October 26, 2000, and the petitioner was maintained in custody. See State v. Lathers, 772 So.2d 659 (La. 2000).

While the above-referenced writ application was pending, the trial court entered rulings on October 19, 2000, (1) allowing the joint trial of the petitioner and his brother, and (2) finding admissible parts of the recorded statement of the petitioner's brother. The petitioner sought review of both rulings in the intermediate appellate court, and that court determined that the trial court had erred in allowing the joint trial but did not address the issue of the recorded statement. This determination was reversed by the Louisiana Supreme Court on November 22, 2000, see State v. Lathers, 774 So.2d 984 (La. 2000), and upon remand, the intermediate appellate court then addressed the issue of the recorded statement and upheld the trial courts' determination with respect to the admissibility thereof. The petitioner then moved to continue the trial date - which was at that time set for November 27, 2000 - and this motion was granted over the State's objection, with a new trial date being scheduled in March, 2001.

On December 15, 2000, the trial court again reviewed the recorded statements of the petitioner and his brother and entered a ruling that each statement could be introduced in its entirety at trial. The petitioner again sought supervisory review, and the scheduled trial date passed pending resolution of the writ application in connection with this issue. On April 24, 2001, the trial court's determination regarding the recorded statements was reversed by the intermediate appellate court, with that court ruling that only the interlocking portions of the co-defendants'

4

statements, relative to their planning a burglary on the evening of April 11, 1988, could be introduced.  The State sought supervisory review of this determination in the Louisiana Supreme Court, which denied review on February 8, 2002.  See State v. Lathers, 807 So.2d 862 (2002).

At a status conference thereafter held on May 7, 2002, a new trial date was scheduled for September 23, 2002.  No trial took place on that date, but at a subsequent status conference held on November 4, 2002, the trial was re-scheduled for December 16, 2002.  The petitioner, however, again moved for and obtained a continuance, over the State's objection, until March 24, 2003.

On March 12, 2003, the trial court again revisited the issue of the admissibility of the recorded statements and issued a ruling setting forth the specific portions of same which the court deemed to be interlocking.  The petitioner again sought supervisory review, and the trial court ordered a stay of proceedings pending a resolution of the petitioner's writ application.  On May 16, 2003, the intermediate appellate court concluded that parts of Johnny Lathers' statement, previously ruled admissible by that court, were in fact inadmissible.  Following this ruling, the trial was re-scheduled to December 1, 2003, and then to January 13, 2004, and then to March 22, 2004.

On the date set for trial, March 22, 2004, the petitioner filed a motion to quash the indictment, based on La. Code Crim. P. art. 578, complaining that his trial had not been commenced within two years of indictment as mandated by that article.  This motion was denied by the trial court on March 23, 2004, and the petitioner's application for supervisory review in the intermediate state appellate court was denied on June 24, 2004.  The intermediate appellate court explicitly concluded that the petitioner's many applications for supervisory review in the appellate courts, taken from various pre-trial rulings, had "interrupted the time limits for trial by creating a cause for delay beyond the control of the state."  The petitioner's subsequent application for supervisory review in the Louisiana Supreme Court was denied on July 23, 2004.  See State v. Lathers, 877 So.2d 995 (La. 2004).

Following the writ denial by the Louisiana Supreme Court, the petitioner again moved for

and obtained a continuance of the scheduled trial date. Finally, on September 28, 2004, the trial of this matter commenced.

<u>LEGAL ANALYSIS</u>

Turning to a substantive review of the petitioner's claims, the standard for review in this Court is that set forth in 28 U.S.C. § 2254. Specifically relevant is 28 U.S.C. § 2254(d)(1), which provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>See also</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. <u>See</u> 28 U.S.C. § 2254(d)(1)-(2); <u>Montoya v. Johnson</u>, 226 F.3d 399 (5th Cir. 2000), <u>cert. denied</u>, 532 U.S. 1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001). Mere disagreement with the state court is not enough: The standard is one of objective reasonableness. <u>Montoya</u>, <u>supra</u>, 226 F.3d at 404. <u>See also</u> <u>Williams v. Taylor</u>, <u>supra</u>, 529 U.S. at 409, 120 S.Ct. at 1521 (2000)("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

Initially, the petitioner contends in his habeas application that the state trial court erred by failing to grant his motion to quash the indictment. In his supporting memorandum before this Court, however, the petitioner conspicuously provides no argument or authority relative to this issue. Accordingly, inasmuch as "issues raised in the petition but not briefed are considered abandoned," the Court concludes that this issue is not properly before it for consideration. <u>Turner v. Epps</u>, 2010 WL 653880 (N.D. Miss., Feb. 19, 2010). <u>See also</u> <u>Gray v. Epps</u>, 2008 WL 4793796 (S.D. Miss., Oct. 27, 2008) ("Issues that are not adequately briefed, with citations to authorities, are deemed waived," <u>citing</u> <u>Curry v. Strain</u>, 262 Fed.Appx. 650 (5th Cir. 2008)); <u>Green v. Quarterman</u>, 2008 WL 442356 (S.D. Tex., Feb. 15, 2008), <u>cert. denied</u>, ____ U.S. ____, 130 S.Ct. 373, 175 L.Ed.2d 139 (2009), ("'A party who inadequately briefs an issue is considered to have abandoned the claim.'").

Further, the Court notes that the petitioner's argument relative to this issue in the state courts, and the state courts' resolution thereof, hinged entirely on an application of state law to the petitioner's claim. Specifically, the state courts concluded that, whereas Louisiana law mandates that a criminal defendant be tried within two years of indictment, this period is subject to interruption and suspension, and the pretrial proceedings in this case, including numerous continuances sought and obtained by the petitioner and including several rounds of supervisory review in the state appellate courts, by both the petitioner and by the State, supported a conclusion that the delay in bringing the petitioner to trial had been justified. In this regard, a federal habeas court is directed to entertain an application for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In making his argument relative to this issue in the state courts, however, the petitioner pointed only to claimed error in the state courts' application of state statutory law, and he failed to effectively

7

refer to any federal statute, constitutional provision, or reported decision raising a federal issue. Accordingly, even if the state court in fact committed error in interpreting state law and in failing to quash the indictment, state courts are "the ultimate expositors of state law," <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (rejecting the contention that a state-intermediate-court error with respect to state law constituted a basis for federal habeas relief). Simply put, "federal habeas corpus relief does not lie for errors of state law." <u>Id.</u> Accordingly, the petitioner's claim relative to this issue is without merit and must be rejected.

The petitioner next contends that the indictment in this case was fatally defective for "failing to list the essential elements [found] by the grand jury that constitute the charged offenses." This contention must also be rejected. In the first place, this contention was never asserted in any of the petitioner's pleadings submitted before the state courts, and under 28 U.S.C. § 2254(b) and (c), a claimant seeking habeas corpus relief in federal court is required first to exhaust his claims by presenting them for review before the courts of the state in which he is confined. The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack. <u>Bufalino v. Reno</u>, 613 F.2d 568 (5th Cir. 1980). As a general rule, federal habeas corpus relief is available on a habeas petition only when all of the claims in the petition have been exhausted through the state courts. <u>Rose v. Lundy</u>, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Claims are considered to be "technically" exhausted, however, when state relief is no longer available, without regard to whether the claims were actually exhausted by presentation to the state courts. <u>Coleman v. Thompson</u>, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Specifically, if a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred,'" then the claim is

procedurally defaulted. <u>Nobles v. Johnson</u>, 127 F.3d 409 (5th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (<u>quoting</u> <u>Coleman v. Thompson</u>, <u>supra</u>). In such instance, the petitioner's unexhausted claim is "technically exhausted because, and only because, petitioner allowed his state law remedies to lapse without presenting his claim to the state courts." <u>Jones v. Jones</u>, 163 F.3d 285 (5th Cir. 1998), <u>cert. denied</u>, 528 U.S. 895, 120 S.Ct. 224, 145 L.Ed.2d 188 (1999), (internal citations and quotations omitted). Accordingly, inasmuch as the instant claim would be procedurally barred from consideration in a post-conviction relief application in state court by Louisiana Code of Criminal Procedure Article 930.8 (providing a 2-year time limit for the assertion of post-conviction claims), it is considered to be procedurally defaulted. Article 930.8 has been found to be a valid procedural bar. <u>See</u>, <u>e.g.</u>, <u>Glover v. Cain</u>, 128 F.3d 900 (5th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1125, 118 S.Ct. 1811, 140 L.Ed.2d 949 (1998). Accordingly, this claim is subject to dismissal for this reason.

Further, in the alternative, the petitioner provides no coherent explanation as to why the indictment in this case was defective, and he only asserts, in conclusory fashion, that (1) the "[e]lements needed to obtain this indictment are critical, and without proper notice of these elements renders the defense seriously disadvantaged", and (2) his attorney could not "properly defend a petitioner without knowing the elements or particulars of these crimes." The indictment, however, clearly stated that the petitioner "did commit second degree murder by killing Linda Wall on or about the 12th day of April, 1988, in violation of R.S. 14:30.1." Accordingly, even if review of this issue were not foreclosed by the petitioner's failure to exhaust, this Court would conclude that the indictment in this case is sufficient.

The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction. <u>Alexander v. McCotter</u>, 775 F.2d 595 (5th Cir. 1985). A claim of the insufficiency of an indictment is reviewable for federal habeas purposes only when the indictment is so defective that under no

circumstances could a valid state conviction result from facts provable thereunder. Such a determination can only be made by looking to the law of the state where the indictment was issued. Id. Article 464 of the Louisiana Code of Criminal Procedure provides that "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Although the indictment shall cite the relevant statute which the defendant is alleged to have violated, error in this citation or even failure to do so will not render the indictment invalid. Id. It is not essential that the date, time or place of the offense be stated with particularity. La. Code Crim. P. arts. 468-69. In addition, words and phrases utilized in the indictment are given either their usual meaning or, where appropriate, their legal meaning. La. Code Crim. P. art. 477. Finally, a bill of particulars may be requested by either the defendant or the trial court to provide "more specifically the nature and cause of the charge." La. Code Crim. P. art. 484. See also State v. Liner, 397 So.2d 121 (La. 1979) (recognizing the validity of Louisiana's short form indictment and stating: "Defendant was, of course, entitled to notice of the aggravating circumstance upon which the state would rely to establish the offense .... However, the recital of the details of the offense is more properly reserved to a bill of particulars."). In the instant case, the indictment adequately set forth, with particularity, the identity of the victim, the date of the offense, and the pertinent statute. This Court, therefore, sees no deficiency in the indictment, and this claim is without merit. See Gross v. Cain, 2010 WL 1552739 (E.D. La., March 11, 2010) (finding "more than adequate" a second degree murder indictment which provided notice to the defendant "of the statutory provision of which he was accused, the date and venue of the murder, and the identity of the victim.").

The petitioner next contends that the prosecution engaged in persistent and repeated acts of misconduct during the State's opening statement and closing argument and thereby rendered his trial fundamentally unfair. In this regard, the petitioner points specifically to (1) comments made by the prosecuting attorney wherein the prosecutor vouched for witnesses' credibility and

expressed a personal opinion regarding the petitioner's guilt, and (2) comments wherein reference was made to evidence outside of the record.

In response to the petitioner's argument, the State responds that a review of this issue is foreclosed by reason of the petitioner's procedural default. This contention appears to have merit, although not entirely for the reason stated. Specifically, although the State points to and relies upon the failure of the petitioner to contemporaneously object to the prosecutor's comments at trial, which is a procedural default sufficient to warrant dismissal of the petitioner's claim in state court, see, e.g., Duncan v. Cain, 278 F.3d 537 (5ᵗʰ Cir.), cert. denied, 537 U.S. 829, 123 S.Ct. 127, 154 L.Ed.2d 43 (2002), a review of the state court record reflects that, when the petitioner raised the claim of prosecutorial misconduct in his initial application for post-conviction relief, the state trial court summarily denied review, stating that "(1) all issues raised herein have been raised on appeal and/or should have been raised on appeal [and] (2) all issues raised herein are factually and/or legally without merit." When the petitioner thereafter resubmitted his application to the state trial court, and when he thereafter sought review in the Louisiana appellate courts, his claims were denied without comment. Accordingly, it appears that the last state court to provide a reasoned response to the petitioner's application relied expressly on a procedural rule, but not on the contemporaneous objection rule. Rather, the state relied upon the procedural rule set forth in La. Code Crim. P. article 930.4, which provides for the dismissal of a claim or claims asserted in a post-conviction relief application if the claim should have been raised on direct appeal but was not.

Generally, a federal court will not review a question of federal law presented to a state court if the decision of the state court rests on a state law ground that is both independent of the federal claim and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). For a state-imposed procedural bar to prevent review by a federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of the federal

law and rests solely on a state procedural bar. <u>Amos v. Scott</u>, 61 F.3d 333 (5th Cir.), <u>cert. denied</u>, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995). To be "adequate", the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover v. Cain</u>, <u>supra</u>. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. <u>Id.</u> This rule applies even when the state court also reviews the petitioner's claim on the merits. <u>Hughes v. Dretke</u>, 412 F.3d 582 (5th Cir. 2005), <u>cert. denied</u>, 546 U.S. 1177, 126 S.Ct. 1347, 164 L.Ed.2d 69 (2006). Further, when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

In the instant case, the state district court expressly ruled, in denying the petitioner's application for post-conviction review, that "all issues raised herein have been raised on appeal and/or should have been raised on appeal". This was clearly a reliance by the state court on La. Code Crim. P. article 930.4, which provides for the dismissal of a claim made in a post-conviction relief application if it raises a claim which should have been raised on appeal. Further, article 930.4 has been recognized as an independent and adequate state procedural ground barring federal habeas corpus relief. <u>See</u> <u>Rose v. Prince</u>, 2009 WL 2922801 (E.D. La., Sept. 10, 2009). Accordingly, a review of the petitioner's claims of prosecutorial misconduct is foreclosed by the petitioner's procedural default.

Notwithstanding the foregoing, a federal habeas petitioner may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto", or can demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." <u>Glover</u>, <u>supra</u>. To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts

12

to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).  The mere fact that the petitioner failed to recognize the factual or legal basis for a claim, however, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id.</u>

In this case, the petitioner has not offered any cause which would excuse the procedural bar imposed by the Louisiana courts.  Further, this Court's review of the record does not support a finding that any factor external to the defense prevented the petitioner from raising the instant claim in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented the petitioner from doing so.  "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  <u>Hogue v. Johnson</u>, 131 F.3d 466 (5th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1014, 118 S.Ct. 1297, 140 L.Ed.2d 334 (1998).  Accordingly, inasmuch as the petitioner has failed to show an objective cause for his default, this Court need not determine whether prejudice existed.  Accordingly, the instant claim is procedurally barred from review by this federal habeas court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed.  <u>Hogue</u>, <u>supra</u>.

To establish a fundamental miscarriage of justice, a petitioner must provide this Court with evidence that would support a "colorable showing of factual innocence."  <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).  To satisfy the factual innocence standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt.  <u>Campos v. Johnson</u>, 958 F.Supp. 1180 (W.D. Tex. 1997).  <u>See also</u> <u>Nobles v. Johnson</u>, 127 F.3d 409, n. 33 (5th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (noting that actual innocence requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the

petitioner has not adequately asserted his claim of actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  <u>Glover</u>, <u>supra</u>.

The petitioner does not present, and the record does not contain, evidence that clearly and convincingly suggests his actual innocence.  Accordingly, the petitioner has failed to overcome the procedural bar relative to the instant claim.  As such, this claim is procedurally barred and should be dismissed with prejudice for this reason.

Finally, even were this Court to disregard the procedural bar, the Court finds that the petitioner's claim of prosecutorial misconduct is without merit.  First, with regard to the prosecution's alleged misconduct in vouching for the credibility of witnesses and expressing a belief as to the petitioner's guilt, the petitioner complains of a statement made by the prosecutor in his opening statement, which addressed the anticipated testimony of an eyewitness, Alton Samuels:

> Alton will tell you the truth.  You'll have to cut right through it to see he's telling you the truth.  It's like talking to a seven or eight year old kid.  He will tell you the truth, and you can look at him, and a good lawyer like me, can jump up and then cross him all up, but his story will be consistent.  He will tell you the truth.

(Tr. Trans. of 9/29/04, p. 169).  The petitioner also points to statements made by the prosecutor during closing argument, wherein the prosecutor again addressed the testimony of Alton Samuels, stating that, "[i]t's hard to get a kid to lie, a young, young kid....  But, I'll tell you this, he told me the truth."  (Tr. Trans. of 9/30/04, p. 158).  And with regard to another eyewitness, Troy Mougeot, the prosecutor stated that, "he was straight" (Tr. Trans. of 9/30/04, p. 162), and "... he told you the truth.  The kid didn't make that up.  They would have you believe that the entire Pointe Coupee Sheriff's Department, concocted this whole thing, just to get [the petitioner].  That's not true." (Tr. Trans. of 9/30/04, p. 153).  And with regard to the petitioner's brother, witness Johnny Lathers, the petitioner points to the prosecutor's statement that, "... his testimony, it was just laced with truthfulness."  (Tr. Trans. of 9/30/04, p. 162).  And finally, the petitioner points to a statement made by the prosecutor that, "I'm telling you – I'm telling you they both did it, believe you me."  (Tr. Trans. of 9/30/04, p. 160)

(referring to the petitioner and to Johnny Lathers).

When a habeas petitioner asserts a generic due process violation due to improper prosecutorial comments, a reviewing court must determine whether the remarks, "in the context of the entire trial, were sufficiently prejudicial to violate [the petitioner's] due process rights." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), <u>quoting</u> <u>Donnelly v. DeChristoforo</u>, <u>supra</u>. "The prosecutor's remarks do not present a claim of constitutional significance unless they were so prejudicial that [the petitioner's] state court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment." <u>Rushing v. Butler</u>, 868 F.2d 800 (5th Cir. 1989). A trial is fundamentally unfair only if the prosecutor's remarks evinced either persistent or pronounced misconduct, or the evidence was so insubstantial that in all probability, but for the remarks, the petitioner would not have been convicted. <u>Id.</u>, <u>citing</u> <u>Kirkpatrick v. Blackburn</u>, 777 F.2d 272 (5th Cir. 1985), <u>cert. denied</u>, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986). When attacked, prosecutorial comments are not considered in isolation, but are evaluated in the context of the entire trial as a whole, including the prosecutor's entire closing argument. <u>Rushing</u>, <u>supra</u>; <u>Kirkpatrick</u>, <u>supra</u>. In undertaking an analysis of whether a prosecutor's argument deprived a petitioner of a fair trial, a court should consider (1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instruction; and (3) the strength of the evidence of the petitioner's guilt. <u>United States v. Ellender</u>, 947 F.2d 748 (5th Cir. 1991); <u>United States v. De La Rosa</u>, 911 F.2d 985 (5th Cir.), <u>cert. denied</u>, 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991) (applying harmless error analysis in the context of prosecutorial misconduct in the form of improper comments during trial).

Based upon a review of the record, the Court does not find that the prosecutor's comments,

evaluated in the context of the entire trial, rendered the petitioner's trial fundamentally unfair. The evidence adduced at trial, although subject to impeachment as hereafter discussed, provided ample evidence of the petitioner's guilt. Witness Mougeot, who was 14 at the time of the offense, testified that he was cleaning up his yard on the evening of the offense, "right at dark", and observed a man jogging past the front of his house. According to Mougeot, the man was wearing a shirt which was all "tore up" and was covered in "a lot of blood". Although Mougeot did not recognize the man at the time, he testified that he encountered the petitioner several years later and immediately recognized the petitioner as the man who he had seen running past his house on the night of the murder. Mougeot further explained an inconsistent prior statement, given in December, 2002, wherein he had stated to the petitioner's attorneys that he could not positively identify the petitioner. Mougeot explained that he had been incarcerated at that time, in the same facility as the petitioner, and had believed that he would be in danger if he were identified as a "rat" or if he had given any indication that he could identify the petitioner as the killer. Accordingly, he had advised the petitioner's attorneys at that time that he could not identify the petitioner. A second witness, Alton Samuels, who was 15 at the time of the offense, testified that he was out on the street during the early evening of April 11, 1988, when he observed the petitioner and Johnny Lathers, both of whom he knew well, in the area of the deceased's home. When he asked what they were doing, they told him to mind his own business. Samuels then observed the petitioner run into the deceased's yard, followed moments later by the sound of breaking glass, followed shortly thereafter by the sound of a woman yelling "help, help, help". Approximately 10 or 15 minutes later, Samuels observed the petitioner return from the deceased's house, carrying a knife, and run off down the road. Samuels also testified regarding a statement which he had given to police in 1991, which statement was essentially similar to his testimony at trial. One notable difference, however, was that he asserted in 1991 that not just the petitioner but both the petitioner and the petitioner's brother went into the deceased's yard. Samuels also explained a prior inconsistent statement, given to the petitioner's

attorneys shortly prior to trial, wherein he had stated to the petitioner's attorneys that he had made the story up. He testified that at that time he had felt intimidated by the petitioner's attorneys and had simply told them what he believed they wanted to hear. Finally, the petitioner's brother, who had pled guilty to manslaughter in connection with the subject offense, also testified at the trial. He asserted that he alone was responsible for the murder of the deceased and that the petitioner had not even been present on the night of the offense. Notwithstanding this testimony, his prior recorded statement was read in open court, wherein he provided detailed assertions that he and the petitioner had both planned to "pull a burglary" on the evening of April 11, 1988, that they walked to the house of the deceased, that the petitioner was carrying a knife that evening, that they saw Alton Samuels and told him to mind his own business, that upon arrival at the deceased's home, Johnny Lathers acted as lookout while the petitioner entered the house, that the petitioner took a brick from a planter in the deceased's yard and threw it through a window, that the petitioner then climbed through the window, that shortly thereafter, Johnny Lathers heard a woman's scream, followed by the petitioner's return approximately 15 minutes later, carrying knife and with blood on his clothes. According to Johnny Lathers' prior recorded statement, the petitioner expressly verbally admitted that he had killed Linda Wall, that he had thrown the knife into the river, and that he had buried his bloody clothes. Although the testimony of these witnesses was subject to impeachment, by reason of the passage of time between the offense and the commencement of trial, by reason of the prior inconsistent statements made by the witnesses, by reason of the witnesses' criminal records, and by reason of the relative youth of witnesses Samuels and Mougeot at the time of the offense, the evidence clearly and substantially pointed to the petitioner as the perpetrator of the offense charged.

In addition to the foregoing, the petitioner's prior recorded statement was also read in open court, wherein he confirmed much of what was stated by his brother but differed as to who had gone into the house and murdered the deceased. According to the petitioner's statement, when

the two brothers arrived at the deceased's house, the petitioner was unwilling to participate in the burglary because there was a light on in the residence and a vehicle in the yard. According to the petitioner, he then departed the scene and only learned of the murder approximately 45 minutes later when his brother returned, covered in blood, and admitted to having killed the woman and thrown the murder weapon in the river.

Based upon the foregoing, the Court concludes that the actions of the prosecutor in vouching for the credibility of the witnesses were not so persistent and pronounced as to render the petitioner's trial fundamentally unfair, and that the evidence was not so insubstantial that in all probability, but for the prosecutor's remarks, the petitioner would not have been convicted. The evidence consistently pointed to the petitioner as having been present at the deceased's house on the night of the murder, and the only serious question appears to have been whether the deceased or his brother, or both, entered the residence and committed the offense charged. While it is true that a prosecutor is not allowed to vouch for the credibility of witnesses where there is an underlying implication that the prosecutor's statements are based on additional personal knowledge about the witness or about facts not in evidence, such comments are not necessarily improper if it is apparent to the jury that the views are based on the evidence presented at trial rather than on personal knowledge of facts outside the record. See Nicolos v. Scott, 69 F.3d 1255 (5th Cir. 1995), cert. denied, 518 U.S. 1022, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996). In the instant case, there is no suggestion whatever that the prosecutor's comments were based upon additional personal knowledge about the case or about the witnesses. Further, it is well-recognized that the prosecution is granted greater leeway in bolstering the credibility of witnesses when the prosecution is responding to attacks on such credibility by the defense. United States v. Ajaegbu, 139 F.3d 898 (5th Cir. 1998) ("[T]he government may present a bolstering argument 'in rebuttal to assertions made by the defense counsel in order to remove any stigma cast' upon a witness."). In the instant case, in light of the witnesses' prior convictions, their prior inconsistent statements, their relative youth

at the time of the offense, and the passage of time since the murder, it was clearly the strategy of the defense to attack the credibility of the witnesses. This was made clear in the defense's cross-examination of each witness, during which cross-examinations the credibility of the witnesses was repeatedly questioned. Accordingly, the Court is unable to conclude that the prosecutor's statements, as above-related, rendered the petitioner's trial fundamentally unfair.

The petitioner also points to statements made by the prosecution during closing arguments wherein, according to the petitioner, the prosecutor made repeated reference to evidence outside of the record. As previously noted, the Court finds this claim to be procedurally defaulted under the independent and adequate exception to habeas review. Notwithstanding, the Court also finds that these statements are not sufficient to warrant setting aside the jury verdict in this case. In this regard, the petitioner specifically complains of repeated efforts by the prosecution to suggest to the jury that both the petitioner and his brother participated in the murder of the deceased. This was apparently an effort on the part of the prosecution to overcome any potential negative inference which may have resulted from the prior guilty plea of Johnny Lathers, i.e., an inference that because one person had already admitted to the offense, the other was unlikely to be guilty. Accordingly, the prosecutor, on multiple occasions, theorized that both the petitioner and his brother had participated in the offense:

"... [B]oth of them went in that house, both of them ...." (Tr. Trans. of 9/30/04, p. 156);

"... I believe Johnny wasn't just the lookout.... He puts it off on his brother, he was in there too." (Tr. Trans. of 9/30/04, p. 158);

"... [T]wo butchers, Lathers and Lathers, the butchers." (Tr. Trans. of 9/30/04, p. 158); and

"I'm telling you – I'm telling you they both did it, believe you me." (Tr. Trans. of 9/30/04, p. 160).

The petitioner next points to attempts by the prosecution to support this theory by attempting to elicit testimony from witnesses that a bloody mark on the deceased's arm, which appeared to be a hand-print, was evidence of another person having been present in the victim's home who held

her down while she was being stabbed.  Objections to these attempts to elicit testimony, however, were sustained by the trial judge, and a cautioning instruction was given to the jury.  <u>See</u> Tr. Trans. of 9/30/04, p. 119.[2]  The petitioner complains, however, that notwithstanding the exclusion of this testimony, the prosecutor stated, during closing argument, that:

> I tried to argue what was on those – on her arms.  Somebody was there holding her down.  That's the argument on my part, but I'm telling you, you can infer it from the facts.

Tr. Trans. of 9/30/04, p. 155.  Finally, the petitioner complains that the prosecutor made an improper reference to a second knife being used to stab the deceased whereas there was no evidence whatever of a second knife.  Specifically, the petitioner complains of the following statement:

> Here's the knife from the scene.  Here's the knife from the scene.  She was stabbed with this knife, this big old thing here ... but I can tell you, you can infer from it, there's more than one knife in that house, folks.  There's more than one knife that went in that body.  Look at the knife, two and a half inches.  There's more than one knife there.

Tr. Trans. of 9/30/04, p. 155.

As previously noted, the prosecutor's statements in this case must be viewed in the context of the entire trial, and it is the duty of this Court to determine whether the improper arguments were "a crucial, critical, highly significant factor in the jury's determination of guilt."  <u>Whittington v. Estelle</u>,

---

[2]     When the prosecution questioned detective Ronald Jewell whether a photograph taken at the scene of the crime appeared to show bloody fingerprints on the victim's arm, the trial court sustained a defense objection that the witness was not testifying as an expert and so could not provide such an opinion, and that the jury could draw its own conclusions from the photograph.  Tr. Trans. of 9/29/04, pp. 195-96.  The prosecution later questioned Dr. Alfredo Suarez about the referenced photograph and elicited testimony from this expert, <u>without</u> objection, that the marks on the victim's arm in fact appeared to show that the victim may have been grabbed or held firmly by the arm, but the trial court next sustained an objection, as overly speculative, to questioning designed to elicit testimony from Dr. Suarez that "two people could have been in that particular house at that time."  Tr. Trans. of 9/30/04, pp. 15-16.  Similarly, the trial judge sustained an objection to a question asked of Detective Anthony McDonald as to whether there may have been more than one person in the victim's house.  And finally, the prosecution questioned Detective McDonald about the referenced photograph, and Detective McDonald testified that the photograph appeared to depict "bloody fingerprints".  A subsequent objection by the defense elicited an admonishment from the trial judge to disregard this testimony.  Tr. Trans. of 9/30/04, pp. 118-19.

704 F.2d 1418 (5th Cir.), <u>cert. denied</u>, 464 U.S. 983, 104 S.Ct. 428, 78 L.Ed.2d 361 (1983). Although some of the remarks by the prosecutor may have been arguably improper, it is this Court's duty to determine whether those statements also were "so prejudicial that ... the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment." <u>Id.</u> Indeed, it has been noted in this context that "a prosecutor's improper argument will ... exceed constitutional limitations in only the most 'egregious cases.'" <u>Menzies v. Procunier</u>, 743 F.2d 281 (5th Cir. 1984).

When viewed in this light, the Court concludes that the prosecutor's comments were not so egregious as to warrant the setting aside of the jury verdict in this case. Specifically, the prosecutor was entitled to argue any theory of the case which was based upon reasonable inferences made from the evidence introduced into the record. Accordingly, the prosecutor was arguably entitled to posit to the jury that two persons may have participated in the murder. There was some evidence in the record suggesting that both the petitioner and his brother entered the deceased's yard on the night of the burglary (the prior statement of witness Alton Samuels, wherein he stated that he observed both parties enter the victim's yard), and in addition to the evidence pointing to the petitioner as the assailant, there was evidence suggesting that the petitioner's brother committed the offense (the petitioner's prior recorded statement implicating his brother and the brother's plea of guilty in connection with the offense). Based upon this evidence in the record, it was not unreasonable for the prosecutor to theorize that both persons may have participated in the charged offense. Further, whereas the prosecutor may have exceeded appropriate bounds when he made reference to a hypothetical second knife being used during the homicide, the Court notes that there was some evidence in the record to support this theory. Specifically, although a "blade" was found at the scene of the murder, protruding from the deceased's body, witness Samuels made reference to the petitioner carrying a knife as he left the scene, and the prior recorded statements of both Johnny Lathers and the petitioner included reference to a knife having been thrown into the river

after the offense. This ambiguity in the testimony arguably allowed for an argument regarding a possible second knife at the scene, and the Court is unable to conclude that this impropriety, if indeed it was, rendered the verdict unreliable. The petitioner admitted, in his prior recorded statement, that he was in fact present at the deceased's residence on the night of the murder with the intent to commit burglary. The alleged improper statements regarding a hypothetical second knife and/or the presence of a second person at the scene of the offense may not be seen to have amounted to "a crucial, critical, highly significant factor in the jury's determination of guilt", Whittington v. Estelle, supra, or to have rendered the petitioner's trial fundamentally unfair.

The petitioner next complains that he was provided with ineffective assistance of counsel at trial because his attorney failed to subpoena one or more key witnesses for trial. In this regard, a habeas petitioner who claims ineffective assistance of counsel must affirmatively demonstrate:

(1)      That his counsel's performance was "deficient", i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2)      That the deficient performance prejudiced his defense, i.e., that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must make both showings in order to obtain habeas relief based upon alleged ineffective assistance of counsel. Id.

To satisfy the deficiency prong of the Strickland standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. See, e.g., Martin v. McCotter, 796 F.2d 813 (5th Cir. 1986), cert. denied, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See, e.g., Bridge v. Lynaugh, 838 F.2d 770 (5th Cir. 1988). This

Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. Martin, supra, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. Bridge, supra, 838 F.2d at 773; Martin, supra, 796 F.2d at 816.

If the petitioner satisfies the first prong of the Strickland test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. Earvin v. Lynaugh, 860 F.2d 623 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 861 (1989). To satisfy the prejudice prong of the Strickland test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2067. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Martin, supra, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." Id. at 816-17.

The above showing is one that the petitioner cannot meet in the instant case. Although the petitioner complains of his attorney's failure to subpoena certain witnesses for trial, the only witnesses that the petitioner points to as having not been subpoenaed are three members of the jury pool who were struck during voir dire and who the petitioner asserts "knew facts of this case, or knew witnesses whose testimony would have benefitted the defense." The first of these, however, John R. Joseph, was not shown to have had any knowledge regarding the case and was struck from the venire for cause based upon his statement that he knew witness Alton Samuels, knew of Samuels' criminal history and could not be impartial in evaluating the witness' testimony. Tr. Trans. of 9/29/04, pp. 94-99. The second, Clarissa Battley, likewise had no information pertinent to the specific facts of this case and was struck from the venire based upon her statement that she also knew Alton Samuels, knew of his criminal record, and believed that Samuels had

stolen a lawnmower from her in the past. Tr. Trans. of 9/29/04, pp. 33-39. According to the petitioner, the testimony of these witnesses would have been of benefit to the defense in impeaching the credibility of witness Samuels. In the Court's view, however, the petitioner's argument is unavailing. Witness Samuels admitted on the witness stand to having been convicted of prior felonies, both manslaughter and aggravated burglary. Accordingly, his testimony was already subject to impeachment for this reason, and any additional testimony from Clarissa Battley regarding his purported theft of a lawnmower, which did not result in either a criminal charge or conviction, would have added little to the trial of this matter.[3] Finally, the third potential juror who the petitioner believes should have been subpoenaed, Lorraine Langlois, apparently approached the trial judge off the record and indicated that she had known the victim and was aware that the victim always kept the back door of her house unlocked. Tr. Trans. of 9/28/04, pp. 142-43. According to the petitioner, the testimony of Langlois could have been used to raise a question regarding whether the offender in fact broke into the deceased's house or whether, instead, the offender entered through an open doorway. This assertion is not persuasive. Specifically, any testimony by Langlois that the deceased always kept her back door unlocked would have been extraneous and irrelevant inasmuch as all testimony pointed consistently to the fact of a brick having been used to break a window in the victim's home and of the perpetrator having entered the house through that window. No evidence whatever suggested that the perpetrator of the offense entered through an open back door. And even the petitioner and his brother, in their respective statements implicating each other, conceded that access to the deceased's home had been through the broken window. Accordingly, the Court finds no error in the petitioner's attorney's failure to subpoena these witnesses for trial and no prejudice to the petitioner resulting from such failure.

---

2.      In addition, it does not appear that this testimony would have been admissible at trial in any event because, under Louisiana evidence law at the time of this trial, testifying witnesses in a criminal trial could only be impeached with evidence of a prior conviction, not with evidence of prior offenses which did not result in conviction. See La. Code Evid. Art. 609.1 ("Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility ....").

24

This claim, therefore, is without merit and must be rejected.

Finally, the petitioner asserts that the trial court erred by failing to sequester the jury during the trial of this matter. This claim, however, relies entirely upon the petitioner's interpretation of state law, and there is no assertion whatever, either before the state courts or in this Court, that such failure resulted in a violation of the petitioner's constitutional rights or of federal law, as is required for the grant of federal habeas relief. Further, the petitioner's argument relative to this claim appears to be in error in any event because it centers around his assertion that Louisiana law mandates that a jury be sequestered during the trial of a capital case. There is no dispute, however, that the petitioner in this case was indicted and tried for second degree murder, which is not and was not a capital offense in Louisiana. Louisiana law does not and did not mandate sequestration of jury during the trial of a non-capital offense. La. Code Crim. P. art. 791. And to the extent that the petitioner complains that, because of the failure to sequester, the jury may have been exposed to adverse publicity or to extraneous information disseminated through the newspapers or other media, there is no evidence whatever of such influence, and the record reflects that the trial judge admonished the jury not to discuss the case with anyone outside of the courtroom or to subject themselves to newspapers or other adverse influence. Tr. Trans. of 9/29/04, p. 293. Accordingly, this claim is also without merit.

<u>RECOMMENDATION</u>

It is recommended that the petitioner's application for habeas corpus relief be dismissed as being without merit. It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability should be denied.

Signed in Baton Rouge, Louisiana, on April 6, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TERRY LATHERS (#106777)**                                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN**                                          **NO. 09-0383-RET-DLD**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 6, 2011.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**